UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| WALDEN WHITEHEAD, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:20-CV-243-HAI |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | ) | & ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

In April 2018, Plaintiff Walden Whitehead filed a protective Title II application for disability insurance benefits and a Title XVI application for supplemental security income. *See* D.E. 13-1 at 18.[1] This was his second such application. His first application was denied by Administrative Law Judge ("ALJ") decision on March 29, 2017. For his second application, Whitehead dates the beginning of his disability period to September 28, 2018. *Id*. His date last insured was December 31, 2018. *Id*. at 19.

Whitehead claims he is disabled due to chronic pain and mental health issues. *See* D.E. 20-1 at 15-18.[2] The Social Security Administration denied Whitehead's claims initially and upon reconsideration. D.E. 13-1 at 18. Then, on February 18, 2020, upon Whitehead's request, ALJ Stacey Foster conducted an administrative hearing. The ALJ heard testimony from Whitehead and impartial vocational expert ("VE") Kenneth Boaz. *Id*. He was found to not be

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.

[2] References to the record *other than the administrative record* are to the page numbers generated by ECF.

1

disabled during the relevant period, September 28, 2018, to March 24, 2020, the date of the decision.

Whitehead brings this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's decision denying his application for disability insurance benefits. The parties consented to the referral of this matter to a magistrate judge. D.E. 16. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's motion for summary judgment (D.E. 20) and **GRANTS** the Commissioner's motion for summary judgment (D.E. 24).

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[3] The ALJ followed these procedures in this case. *See* D.E. 13-1 at 18-32.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Whitehead "has not engaged in substantial gainful activity since September 28, 2018, the alleged onset date." D.E. 13-1 at 21.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities,

---

[3] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). The ALJ found that Whitehead has the following severe impairments: "arthritis, chronic bronchitis, arterial stricture, foreign body in right eye, tremors, depression, anxiety, learning disorders, and intellectual disability (20 CFR 404.1520(c) and 416.920(c))." D.E. 13-1 at 21.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Whitehead failed to meet this standard. D.E. 13-1 at 21-24. The ALJ considered listings 12.04, 12.05, 12.06, and 12.11, but found none of them satisfied in Whitehead's case. *Id*. Whitehead does not challenge this determination.

If, as here, a claimant is not found disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found Whitehead had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) (i.e., lifting and/or carrying 20 pounds occasionally and 10 pounds frequently, standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday, sitting (with normal breaks) for a total of about six hours in an eight-hour workday, and pushing and/or pulling consistent with lifting and/or carrying) except he can occasionally climb ramps and stairs, but never ladders, ropes or scaffolds. He can occasionally stoop, kneel, crouch and crawl. He can occasionally reach overhead and frequently reach in all other directions. He can frequently handle, finger and feel. He should avoid concentrated exposure to extreme heat/cold, wetness, vibration and pulmonary irritants. He should avoid all exposure to hazards. He can understand, remember and carry out simple instructions and procedures involving brief initial learning periods, meaning periods of 30 days or less. He can maintain concentration, persistence and pace for simple tasks involving little or no independent judgment and minimal variation. He can perform tasks that can be taught by demonstration. He can tolerate occasional interaction with the general public. He can adapt to the pressures and changes of a routine work environment.

D.E. 13-1 at 25. Whitehead's objections center on the ALJ's RFC finding.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of his residual functional capacity), he is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Whitehead met this disability standard—he was "unable to perform any past relevant work." D.E. 13-1 at 30.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Whitehead was not disabled at this step. D.E. 13-1 at 31-32. The ALJ explained that she asked the VE at the hearing "whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id*. She accepted the VE's testimony that Whitehead could find work as, for example, "a bagger in garments and laundry" or an office cleaner. *Id*. at 31. The ALJ did not accept the VE's opinion that Whitehead could also work as a sorter of agricultural produce. *Id*. at 31. But, because sufficient work existed in the national economy that Whitehead could perform, the ALJ found him "not disabled" as defined by the regulations. *Id*.

Accordingly, on March 24, 2020, the ALJ issued an unfavorable decision, finding that Whitehead was not disabled, and was therefore ineligible for disability insurance benefits and supplemental security income. D.E. 13-1 at 32. The Appeals Council declined to review the ALJ's decision on October 20, 2020. *Id*. at 1.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th

Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Disability determinations often hinge on the claimant's credibility.[4] The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

---

[4] Whitehead mentions the standards for evaluating credibility, but nowhere directly alleges the ALJ made an improper credibility finding. D.E. 20-1 at 13-14.

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[5] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*, 486 F.3d at 249.

### III. Mental Disability

Whitehead's first argument is that "the ALJ disregarded a number of his medical opinions in making the determination that he did not suffer from a significant psychological impairment nor that his intellectual disability would not affect his ability to work." D.E. 20-1 at 15. The Court observes at the outset that this framing of the issue misconstrues the ALJ's order.

First, the ALJ did not find that Whitehead "did not suffer from a significant psychological impairment." D.E. 20-1 at 15. In fact, the ALJ found that Whitehead had several

---

[5] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

"severe impairments," including "depression, anxiety, learning disorders, and intellectual disability." D.E. 13-1 at 21.

Second, it is also not true that the ALJ found Whitehead's "intellectual disability would not affect his ability to work." D.E. 20-1 at 15. The ALJ explicitly found that Whitehead's "severe impairments," including his "intellectual disability . . . significantly limit the ability to perform basic work activities." D.E. 13-1 at 21. Taking these impairments into consideration, the ALJ's RFC limits Whitehead to "simple tasks involving little or no independent judgment and minimal variation" that are "routine" and can be taught "by demonstration" using "simple instructions" and accommodate learning periods of up to 30 days. *Id*. at 25.

Whitehead acknowledges that the ALJ in this matter deviated (in his favor) from the findings of the prior ALJ to find that Whitehead suffers "severe mental impairments." D.E. 20-1 at 15 (quoting D.E. 13-1 at 25-26). And these impairments impacted the ALJ's assessment of his mental functional capabilities. D.E. 13-1 at 29. And Whitehead acknowledges that the ALJ relied on the report of psychologist Dr. William Rigby. D.E. 20-1 at 15-16.

Whitehead argues the ALJ should have "given more weight and consideration" to Dr. Rigby's test results (which include Whitehead's IQ scores and functional academic levels) along with Dr. Rigby's finding that Whitehead suffers from depressive disorder, reading disorder, disorder of written expression, mathematics disorder, and intellectual disability. D.E. 20-1 at 16. Whitehead acknowledges the ALJ explicitly considered all these findings. *Id*.; *see* D.E. 13-1 at 29. The ALJ in fact found that Whitehead's "depression, anxiety, learning disorders, and intellectual disability" were "severe impairments" that impacted Whitehead's RFC. D.E. 13-1 at 21.

7

The ALJ did not find these disorders met or equaled a listing. D.E. 13-1 at 23-24. But Whitehead does not appear to challenge this finding, as he nowhere addresses the elements of the relevant listings.

Instead, Whitehead argues Dr. Rigby's findings should have been weighed differently. Whitehead observes, "the ALJ noted that Dr. Rigby found he had marked restrictions in his ability to adapt to normal pressures of day to day work activity." D.E. 20-1 at 16. But again, Whitehead says the ALJ "simply disregard[ed]" these "uncontradicted" findings. *Id*. Whitehead describes these findings by Dr. Rigby as "uncontradicted in the record by any other medical evidence." But the ALJ "acted as her own medical expert in picking and choosing pieces of the record to contradict Dr. Rigby's findings." *Id*. Whitehead concludes: "The ALJ completely excluded Dr. Rigby's opinion that he had marked limitations in his ability to perform day to day work activities which in and of itself should have rendered this individual disabled." *Id*.

It is true that the ALJ rejected some aspects of Dr. Rigby's report, but the ALJ did not do so without adequate reasoning:

> Dr. Rigby, the consultative psychological examiner, opined the claimant had a marked impairment in his ability to understand, retain, and follow simple instructions; no impairment in his ability to sustain concentration and persistence to complete tasks in a normal time; moderate impairment in his ability to maintain social interactions with supervisors, friends, and the public; and marked limitations in his ability to adapt and respond to the pressures of normal day-to-day work activity (Exhibit B11F). This opinion is unpersuasive. It is inconsistent with his long history of skilled and semi-skilled work. Furthermore, while he has some impaired stress tolerance, there is no evidence of a marked or extreme degree of functional impairment.

D.E. 13-1 at 30.

In context, what the ALJ found "unpersuasive" was Dr. Rigby's opinion that Whitehead "had a *marked* impairment in his ability to understand, retain, and follow simple instructions" and "*marked* limitations in his ability to adapt and respond to the pressures of normal day-to-day

8

work activity." *Id*. Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

The Court agrees with the ALJ that Dr. Rigby's description of "marked" impairments is at odds with the fact that Whitehead worked regularly for years under the same mental impairments. Whitehead's work history demonstrates his ability to follow simple instructions and to tolerate normal day-to-day work activity. The ALJ thus found that these aspects of Dr. Rigsby's opinion lacked consistency with the overall record, which includes nonmedical evidence. 20 C.F.R. § 416.920c(c)(2). The ALJ's determination that certain aspects of Dr. Rigby's report are "unpersuasive" is not unsupported by substantial evidence.

Whitehead offers an additional argument, namely that *under previous versions of the listings*, his psychological-testing scores would have qualified him as disabled. D.E. 20-1 at 16. Whereas there was previously a listing for "mild mental retardation," Listing 12.05C, the current relevant listing is 12.05, Intellectual Disorder. Listing 12.05C was removed effective January 17, 2017. *Revised Medical Criteria for Evaluating Mental Disorders*, 81 FR 66138-01. The ALJ here was bound to apply the regulations as they existed at the time of Whitehead's application, not as they existed in the past. *See Dulworth v. Saul*, No. 2:19-CV-35, 2020 WL 3564479, at *9 (M.D. Tenn. May 22, 2020) (finding the ALJ properly applied current Listing 12.05 to a claim filed after January 17, 2017), *report and recommendation adopted*, 2020 WL 3549668 (M.D. Tenn. June 30, 2020). Assuming without deciding that Whitehead is correct that he would have satisfied Listing 12.05C, he provides no authority suggesting an ALJ should find a person disabled because the person would have qualified under a listing that has been revoked.

Finally, Whitehead argues he satisfies Grid Rule "22.09." D.E. 20-1 at 17. The Commissioner (as the Court does) interprets as a reference to Grid Rule 202.09. As the Commissioner points out, this Grid Rule requires that the claimant be "illiterate or unable to communicate in English," which Whitehead is not. D.E. 24 at 8. Whitehead acknowledges on the same page as this argument that he reads on a second-grade level.[6] D.E. 20-1 at 17. The ALJ's decision on this point is not unsupported by substantial evidence.

## IV. Pain

Whitehead also argues, "The ALJ erred by not considering the Plaintiff's pain and, therefore, this action should be reversed and remanded." D.E. 20-1 at 18. The ALJ did in fact consider Whitehead's pain. She recounted his various descriptions of pain in his application and his hearing testimony. D.E. 13-1 at 26. She recounted the records of pain issues in his medical records. *Id*. at 27. The ALJ found that Whitehead's arthritis was one of his "severe impairments" that affected his RFC. *Id*. at 21. But the ALJ ultimately concluded that Whitehead's suggestion that his pain level makes it impossible for him to perform light work was "not supported by the minimal [medical] findings." *Id*. at 28. The ALJ described these findings in detail, including the fact Whitehead appeared to be improving and was not using any assistive medical device. *Id*. at 26-27. Although Whitehead could not perform his past work, his physical disabilities did not render him "unable to perform light work with appropriate postural limitations." *Id*. at 28.

To the extent Whitehead argues the ALJ completely disregarded Whitehead's pain, this argument is contradicted by the record. To the extent Whitehead argues the ALJ should have weighed the evidence differently, the ALJ's decision was not unsupported by substantial

---

[6] Whitehead states early in his motion to dismiss that he is "unable to read and write." D.E. 20-1 at 2. But he testified that he can read small words (*id*.), school records showed he finished 8th grade with an average grade of C in reading (*id*. at 5), and test results from October 2018 indicate a grade-2.4 reading level (*id*. at 9, 16, 17).

10

evidence. To the extent Whitehead may be arguing the ALJ made an improper credibility determination, the ALJ's determination that his "allegations regarding the severity of his pain and limitations are not supported by the minimal findings" is not a credibility determination unsupported by substantial evidence. The ALJ explained from the medical records how Whitehead's treatment was conservative and his arthritic pain level was, if anything, improving.

In sum, Whitehead has not pointed to any legal error on the part of the ALJ. He simply argues the record should have been weighed differently. But the ALJ's decision was not unsupported by substantial evidence.

## V. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1)　Plaintiff's Motion for Summary Judgment (D.E. 20) is **DENIED**;

(2)　Commissioner's Motion for Summary Judgment (D.E. 24) is **GRANTED**;

(3)　**JUDGMENT** will be entered in favor of the Commissioner by separate contemporaneous order.

This the 28th day of October, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge